In the Matter of the WARDEN OF the WISCONSIN STATE PRISON, Appellant.

Richard A. MOECK, Plaintiff-Appellee,

v.

Inspector John ZAJACKOWSKI et al., Defendants-Appellees.

No. 75–1047.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 28, 1975.

Decided Sept. 3, 1976.

178

Bronson C. La Follette, Atty. Gen., James H. Petersen, Asst. Atty. Gen., Madison, Wis., for appellant.

David Walsh, Madison, Wis., for appellee.

Before FAIRCHILD, Chief Judge, and SWYGERT and TONE, Circuit Judges.

FAIRCHILD, Chief Judge.

The appellant, Ramon L. Gray, Warden of the Wisconsin State Prison, appeals from the order of the District Court for the Western District of Wisconsin enjoining him "from interfering in any way with the presence of Richard Allen Moeck in the courtroom of this court, in Madison, Wisconsin, at 9:00 a. m., January 30, 1975." *Moeck v. Zajackowski*, 385 F.Supp. 463, 469 (W.D.Wis.1974). This appeal is to determine whether a lawfully incarcerated state prisoner is entitled to be present at the trial of an action, not related to the terms of his confinement, which he brought in the district court under 42 U.S.C. § 1983. The warden argues: (1) that he is responsible by statute [1] for custody of all prisoners in the state prison; (2) that he must send prison guards to accompany any prisoner who is outside the confines of the prison; and (3) that he finds that the expense of escorting prisoners to federal court is an unreasonable and unnecessary burden.

---

**1.** Wis.Stat.1971 §§ 53.04, 53.06. These statutes specify the general duties of the warden of the state prison:

*53.04 Duties of warden and superintendents.* The warden or the superintendent of each state prison shall have charge and custody of his prison and all lands, belongings, furniture, implements, stock and provisions and every other species of property within the same or pertaining thereto. He shall enforce the regulations of the department for the administration of the prison and for the government of its officers and the discipline of its inmates.

*53.06 Delivery of persons to prisons.* The sheriff shall deliver to the reception center designated by the department every person convicted in his county and sentenced to the Wisconsin state prisons as soon as may be after sentence, together with a copy of the judgment of conviction. The warden or superintendent shall deliver to the sheriff a receipt acknowledging receipt of the prisoner, naming him, which receipt the sheriff shall file in the office of the clerk who issued the copy of the judgment of conviction. When transporting or delivering a client to the Wisconsin home for women the sheriff shall be accompanied by an adult woman.

## I.

The plaintiff-appellee Moeck is currently a prisoner in the custody of the appellant at the Wisconsin State Prison located at Waupun, Wisconsin.[2] The plaintiff brought an action for damages against the defendant, Inspector John Zajackowski, of the Wausau, Wisconsin Police Department. The plaintiff alleged that he was deprived of his rights secured by the Constitution when the defendant, a police officer, wrongfully disclosed to the plaintiff's employer a record of plaintiff's juvenile offenses. The plaintiff further alleged that his subsequent dismissal was caused by the disclosure of his record. Jurisdiction appears under 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983.

Trial in this lawsuit was scheduled for October 3, 1974. Upon direction of the district court, the Clerk issued a writ of *habeas corpus ad testificandum.* It was addressed to the United States Marshals of the Eastern and Western Districts of Wisconsin and to the appellant, Warden Gray. The writ directed that the plaintiff be brought to the courtroom in Madison on the day of trial. The warden moved for an order clarifying the writ, to determine which of the parties was responsible for bringing the plaintiff to the courtroom in Madison; he also moved for an order discharging him from any obligation for transporting and guarding the plaintiff. Judge Doyle then directed the warden to show cause why he should not be enjoined from preventing the plaintiff from being present in the courtroom on the day of trial. On September 27, 1974 a hearing was held on the warden's motions and the order to show cause. The Attorney General of Wisconsin appeared for the warden and the United States Attorney appeared for the marshals. On December 5, 1974 Judge Doyle ordered that the writs be quashed and that Warden Gray be enjoined from preventing the plaintiff from appearing in court on January 30, 1975. *Moeck v. Zajackowski,* 385

F.Supp. 463, 469 (1974). The order has been stayed pending the appeal, and we understand the trial date has been postponed.

## II.

The warden argues that the "most compelling reason" for reversal of the district court's order is the lack of jurisdiction. Judge Doyle quashed the writ of *habeas corpus ad testificandum* after a hearing in which the warden appeared voluntarily to move that the writ be clarified. Judge Doyle concluded "that it is not appropriate for this court to issue a writ of habeas corpus either to the warden or to one or both United States Marshals." *Moeck, supra,* at 468. Instead, he issued an injunction directed solely at the warden.

■ The warden contends that the issuance of the writ constituted an abuse of the court's discretion and violated the principles of comity between the state and federal sovereigns. See *Abelman v. Booth,* 62 U.S. (21 How.) 506, 16 L.Ed. 169 (1858) and *Covell v. Heyman,* 111 U.S. 176, 4 S.Ct. 355, 28 L.Ed. 390 (1883). The jurisdictional power of the court in issuing the injunction depends on obtaining *in personam* jurisdiction over the person to whom the injunction is directed. See 7 J. Moore, *Federal Practice* § 65.13 (1975); *Chase Nat'l Bank v. Norwalk,* 291 U.S. 431, 54 S.Ct. 475, 78 L.Ed. 894 (1934).

■ We find that in appearing for the September 27, 1974 hearing to show cause the warden subjected himself to the jurisdiction of the court. Even though the court subsequently quashed the writ, which was one of the subjects of the hearing, it retained the requisite *in personam* jurisdiction to enjoin the actions of the warden. Warden Gray, through the Attorney General, did not then challenge the jurisdiction of the court to issue the writ or to grant the injunction although he does so on appeal.[3]

---

**2.** The Wisconsin State Prison at Waupun is located in the Eastern District of Wisconsin.

**3.** In *Edgerly v. Kennelly,* 215 F.2d 420 (7th Cir. 1954) our court held that the district court

## III.

The injunction to prohibit Warden Gray from interfering with Mr. Moeck's exercise of his "fundamental individual interest" of "access to a judicial determination of . . . [his] . . . federal constitutional rights and to judicial vindication of the rights." *Moeck, supra,* at 468. Judge Doyle found this "interest" rooted in the due process clauses of the Fifth and Fourteenth Amendments. The judge did not decide whether Mr. Moeck's section 1983 complaint successfully alleged the deprivation of a constitutional right; rather he determined that every such claimant has the fundamental interest of access to judicial proceedings, and that access includes attendance at trial. The court further held that the state may not restrict the exercise of this "interest" by a prisoner unless it is able to demonstrate that the restriction "is related both reasonably and necessarily to the advancement of a justifiable purpose of imprisonment." *Moeck, supra,* at 486. Failing to satisfy this standard, the warden was enjoined from restricting the exercise of this interest by Mr. Moeck.

In reaching this decision the court employed the standard articulated in *Morales v. Schmidt,* 494 F.2d 85, 87 (7th Cir. 1974). This court held that a state may restrict the free expression of a prisoner if it can demonstrate that the restriction is related "both reasonably and necessarily to the advancement of a justifiable purpose of imprisonment." *Morales, supra,* at 87. See also *Procunier v. Martinez,* 416 U.S. 396, 413, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974).

■ We do not agree with the district court as to the content to be ascribed to the fundamental interest of a prisoner in access to the courts. We accord greater weight to the interest of the state in maintaining the confinement of persons serving sentences at the place and institution chosen by the state, in avoiding risks of escape, and in economical administration of custody without incurring expenses which the state reasonably deems unnecessary. Accordingly, we do not allocate to the state the same burden of justification as did the district court for the state's refusal to bear the expense of transporting Mr. Moeck to appear at trial of his case.

■ We find no support in the Constitution or in judicial precedent for the proposition that a prison inmate has a fundamental interest in being present at the trial of a civil action to which he is a party, sufficient to outweigh, as a matter of course, the interest of the state in avoiding expense. The due process requirements of the Fifth and Fourteenth Amendments, which guarantee access to the courts, do not grant a prisoner the right to attend court in order to carry on the civil proceedings which he initiates. *Tabor v. Hardwick,* 224 F.2d 526, 529 (5th Cir. 1955), *cert. denied,* 350 U.S. 971, 76 S.Ct. 445, 100 L.Ed. 843 (1956); *McKinney v. Boyle,* 447 F.2d 1091, 1094 (9th Cir. 1971); *Clark v. Hendrix,* 397 F.Supp. 966, 969 (N.D.Ga.1975). Prisoners have been extended access to law libraries and jailhouse lawyers in order to allow them to establish what legal claims they might have and to provide them the means to file suits. *Johnson v. Avery,* 393 U.S. 483, 487, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). However in *Wolff v. McDonnell,* 418 U.S. 539, 576, 94 S.Ct. 2963, 2984, 41 L.Ed.2d 935 (1974), the

could not issue an *ad testificandum* writ extraterritorially. The vitality of that decision may be in question, *Carbo v. United States,* 364 U.S. 611, 619, 81 S.Ct. 338, 5 L.Ed.2d 329, but we need not reach this question in this case. Appellant's attack on the power of the district court to issue the writ extraterritorially does' not amount to a challenge of the district court's jurisdiction to grant an injunction against a party who has submitted to the jurisdiction of the court. The injunction did not require the release of Mr. Moeck from custody; rather it enjoined the warden from preventing him from appearing in court. The warden was permitted to keep Mr. Moeck in custody while he traveled to Madison and attended the trial. *Cf. United States ex rel. Moses v. Kipp,* 232 F.2d 147, 150 (7th Cir. 1956).

Supreme Court chose not to extend the right to access to the courts:

". . . Finally, the Fourteenth Amendment due process claim based on access to the courts, *Ex Parte Hull*, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); *Younger v. Gilmore*, 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971), has not been extended by this Court to apply further than protecting the ability of an inmate to prepare a petition or complaint."

There are doubtless situations in which fulfillment of a fundamental interest of a prisoner so reasonably requires his being transported to a place outside the place of confinement that it must outweigh the state's interest in avoiding the risks and expense of such transportation; but we think the particular circumstances must be considered in order to identify those situations. The interest in life and health is surely fundamental, but the circumstances relevant to a decision that a prisoner has a right to transportation elsewhere for medical treatment would be such an example.

It can be granted that the right of a prisoner to file a civil action may have little meaning if success is reasonably dependent on his immediate presence in court, and such presence is denied. But we would not accord him an automatic right to be present, and thus present the state, as was done by the relief granted here, with the choice of releasing him from custody, or bringing him to court at substantial expense.

■ We suggest, although it will be seen that it may not be strictly necessary to this decision, that the determination whether a prisoner's interest in being present in court outweighs the state's relevant interests, is a discretionary one. Some of the relevant considerations would seem to be: How substantial is the matter at issue? How important is an early determination of the matter? Can the trial reasonably be delayed until the prisoner is released? Have possible dispositive questions of law been decided? Has the prisoner shown a probability of success? Is the testimony of the prisoner needed? If needed, will a deposition be reasonably adequate? Is the prisoner represented? If not, is his presence reasonably necessary to present his case?

We conclude, however, that in the instant case it is not necessary to decide that a prisoner's right of access to the courts includes a right to be present at the trial of his civil action not involving the grounds for nor the conditions of his imprisonment.

■ This follows because it appears that the state is granting more favorable treatment to prisoners with civil actions in a state court than to prisoners with civil actions in a federal court, and we find no rational basis for the difference.

Sections 292.44 and 292.45, Wis.Stats. (1971), provide for the appearance of a prisoner as a witness and for reimbursement of the institution out of county funds for the expenses incidental to the transportation of the prisoner. The exact terms of the statute do not seem to provide, clearly at least, that an indigent prisoner is entitled to transportation at public expense to attend a state court trial in a civil case to which he is a party.

The state disclosed, however, at oral argument, that under this statute the warden is willing to transport an inmate to any state court after the judge has decided that the inmate's presence is necessary. No limitation is imposed as to the nature of the trial. Prisoners are transported to appear in a variety of civil cases. Although the venue of many cases is in a state court close to the prison, where transportation is less expensive, many state courts are at substantially greater distances than the federal courts. The warden does not argue that transporting prisoners to federal court presents more dangers of any kind than the same trip to a state court.

Counsel argues, in substance, that since the state courts supply an adequate forum for Mr. Moeck's present litigation, Mr.

Moeck has no right to similar treatment when he chose to bring his action in federal court.

In a letter written after oral argument, counsel said, "I believe the panel will recall that my argument was premised upon the fact that once the plaintiff takes his federal forum he takes that forum with whatever disabilities it may have including an inability to bring him before the court. That was stated in contrast to the state procedures which do provide a vehicle, specifically established in statute, for plaintiff's presence."

We deem this classification not rationally related to a legitimate interest of state government. *Cf. Walter's v. City of St. Louis,* 347 U.S. 231, 74 S.Ct. 505, 98 L.Ed. 660 (1954); *Carrington v. Rash,* 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965); *Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920). In our view, the state's refusal to transport a prisoner to federal court on the same basis as to a state court is a denial of equal protection of the laws.

■ Because the decision of the district court appeared not to require a determination, in the discretion of the court, that Moeck's presence at trial is reasonably necessary, we do not understand that the court made such determination. Accordingly, we reverse and remand for the determination whether it be reasonably necessary or not and for further proceedings consistent with this opinion.

REVERSED.